IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CATHERINE D.,** <br><br> **Plaintiff,** <br><br> v. <br><br> **NANCY A. BERRYHILL, Acting Commissioner of Social Security,** <br><br> **Defendant.** | Case No. 18-cv-3262 <br> Magistrate Judge Mary M. Rowland |

# MEMORANDUM OPINION AND ORDER

Plaintiff Catherine D.[1] filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act). The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c). For the reasons stated below, the case is remanded for further proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB on June 13, 2014, alleging that she became disabled on June 11, 2014. (R. at 13, 182–85). The applications were denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 123–24). On April 6, 2017, Plaintiff, represented by counsel, testified at a hearing before

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

an Administrative Law Judge (ALJ). (*Id*. at 30–81). The ALJ also heard testimony via telephone from William E. Villa, a vocational expert (VE). (*Id*. at 13, 75). The ALJ denied Plaintiff's request for benefits on June 27, 2017. (*Id*. at 13–23). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of June 11, 2014 through her date last insured of June 30, 2017. (*Id*. at 15). At step two, the ALJ found that Plaintiff's lupus and osteoarthritis of the knees were severe impairments. (*Id*. at 16). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the enumerated listings in the regulations. (*Id*. at 17). The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[2] and determined that Plaintiff has the RFC to perform sedentary work, except:

> [S]he can frequently operate hand controls bilaterally. She can frequently handle, finger, and feel bilaterally. The claimant can occasionally climb ramps and stairs. She cannot climb ladders, ropes or scaffolds. She can occasional stoop, kneel, crouch, and crawl. The claimant cannot perform work at unprotected heights or around moving mechanical part. She cannot engage in the operation of a motor vehicle. She cannot have exposure to vibration.

(*Id*. at 18). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff was capable of performing her past work as an administrative assistant and branch manager. (*Id*. at 22). Accordingly, the ALJ concluded that

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

Plaintiff was not under a disability, as defined by the Act, from the alleged onset date through June 30, 2017. (*Id.* at 23). The Appeals Council denied Plaintiff's request for review on March 14, 2018. (*Id.* at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Administration (SSA). 42 U.S.C. § 405(g). In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Substantial evidence "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citation omitted). "We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (internal quotations and citation omitted). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with

enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (internal quotations and citation omitted).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (internal quotations and citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citation omitted). "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citation omitted).

### III. DISCUSSION

In her request for reversal or remand, Plaintiff challenges the ALJ's adverse decision on a number of fronts. After reviewing the record and the parties' briefs, the Court is persuaded that the ALJ, in finding Plaintiff not disabled, erred in her assessment of the medical opinion evidence and the RFC.[3]

The ALJ's analysis does not allow the Court to conclude that substantial evidence supports her conclusions about the impact of Plaintiff's limitations on her ability to

---

[3] Because the Court remands on these bases, it need not address Plaintiff's other arguments at this time.

work and her determination that Plaintiff can perform her past work as an administrative assistant and branch manager. *See Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (an ALJ must "build an accurate and logical bridge from the evidence to her conclusion.") (citations and quotations omitted) and *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015) (the ALJ "must adequately articulate her analysis so that we can follow her reasoning.").

**A. Treating Source Opinions**

An ALJ evaluating a claim of disability "must consider all medical opinions in the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *see* 20 C.F.R. § 404.1527(b). More weight is given to "the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." 20 C.F.R. § 404.1527(c)(1). Because an examining doctor has "greater familiarity with the claimant's condition and circumstances," an ALJ can reject an examining doctor's opinion "only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). The opinion of a treating doctor "generally is entitled to controlling weight if it is consistent with the record, and it cannot be rejected without a 'sound explanation.'" *Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2) and *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011)).[4]

---

[4] In 2017, the SSA adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules only apply to disability applications filed on or after March 27, 2017, they are not applicable here. *See id; see also* SSR 96-2p.

The Seventh Circuit has held that "[a]n ALJ is required to consider findings that support a treating doctor's opinion; failure to do so is error." *Hardy*, 908 F.3d at 312; *see also Jelinek*, 662 F.3d at 811 ("[a] decision denying benefits need not discuss every piece of evidence, but when an ALJ fails to support her conclusions adequately, remand is appropriate"). If a treating physician's opinion is not given controlling weight, an ALJ must determine what value the assessment merits (*Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)), considering factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors. 20 C.F.R. § 404.1527(c)(2); *Scrogham*, 765 F.3d at 697; *see also Fox v. Berryhill*, 2017 U.S. Dist. LEXIS 26765, at *18 (N.D. Ill. Feb. 27, 2017) ("the ALJ must sufficiently account for the factors in 20 C.F.R. 404.1527 [and] the ALJ did not do so here preventing this Court from assessing the reasonableness of the ALJ's decision in light of th[ose] factors") (internal citations and quotations omitted) and SSR 96-2p, 1996 SSR LEXIS 9 (treating medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527.").

In this case, Plaintiff argues that the ALJ improperly discredited the opinions of treating physicians Dr. Carmelita Colbert and Dr. Diana Burda. (Dkt. 12 at 11–13). Dr. Burda was Plaintiff's primary care physician and Dr. Colbert was her rheumatologist. (R. at 929, 1401). The ALJ gave both doctors' opinions "little weight."

(*Id.* at 21). She reasoned that their statements about Plaintiff's limitations in sitting, standing and walking, requirements of significant rest and steroids, and that her lupus flares would prevent her from performing her job, were inconsistent with the record because "2016 treatment records indicated [Plaintiff's] lupus was stable and she reported feeling 'fine'." (*Id.*). Responding to Plaintiff's arguments, Defendant contends that the ALJ properly concluded that these doctors' statements were not supported by the record and that the ALJ sufficiently considered the regulatory factors by acknowledging Dr. Colbert's specialization as a rheumatologist and considering the supportability and consistency factors. (Dkt. 18 at 9–11).

The Court agrees with Plaintiff that the ALJ's assessment of the treating physicians was deficient. Contrary to Defendant's characterization, the ALJ's decision is not like the one in *Schreiber v. Colvin* which "ma[de] clear that [the ALJ] was aware of and considered many of the factors, including Dr. Belford's treatment relationship with Schreiber, the consistency of her opinion with the record as a whole, and the supportability of her opinion." 519 F. App'x 951, 959 (7th Cir. 2013).

The ALJ noted that Dr. Colbert was a rheumatologist. But the analysis stopped there. The ALJ's opinion does not reflect what consideration she gave to the fact that Dr. Colbert was a rheumatologist, especially considering that the regulations generally "give *more* weight to the medical opinion of a specialist about medical issues related to [] her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c) (emphasis added). Rheumatologists are specifically trained to treat lupus and osteoarthritis, Plaintiff's impairments that the

ALJ found to be severe.[5] The ALJ also did not discuss the nature or length of the treatment relationship or frequency of examination for either doctor. Dr. Colbert treated Plaintiff for more than three years (R. at 1401) and Dr. Burda for multiple years. (*see id.* at 485, 929).

The ALJ briefly recited a few of Dr. Colbert's and Dr. Burda's findings but did not discuss the medical evidence or explanations supporting their opinions. Instead the ALJ discounted their findings because "2016 treatment records indicated [Plaintiff's] lupus was stable and she reported feeling 'fine'." In reaching this conclusion, the ALJ relied on notations from two doctor's visits in 2016 where Plaintiff reported feeling "fine" and the doctor noted that her lupus "appears stable." (R. at 21, 1359, 1361, 1376). It is not clear to the Court how these notations undermine all of Dr. Colbert's and Dr. Burda's findings, especially when the record reflects a longitudinal history of their treatment of Plaintiff and their conclusions about her limitations are consistent *with each other*. (*see e.g.* R. at 929, 957; *see also* Dkt. 19 at 11).

Moreover, a doctor's report that a condition is "stable" or "improving" or a patient's self-report of feeling "fine" do not necessarily mean a plaintiff is able to work. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is capable

---

[5] "A rheumatologist is an internist or pediatrician who received further training in the diagnosis (detection) and treatment of musculoskeletal disease and systemic autoimmune conditions commonly referred to as rheumatic diseases….Common diseases treated by rheumatologists include osteoarthritis, gout, rheumatoid arthritis, chronic back pain, tendinitis, and lupus." *See* American College of Rheumatology website, https://www.rheumatology.org/I-Am-A/Patient-Caregiver/Health-Care-Team/What-is-a-Rheumatologist.

of doing light work."); *Scott*, 647 F.3d at 739 ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce."); *Marks v. Colvin*, 2014 U.S. Dist. LEXIS 116757, at *32 n.14 (N.D. Ill. Aug. 21, 2014) ([T]he ALJ routinely referenced Ms. Marks's 'stability' and equated it with an overall ability to engage in sedentary work, even though the term was used by her doctors to describe her medical condition [lupus]…Such an approach runs afoul of the Court's observation in *Murphy* that a person can suffer considerable limitations preventing gainful employment and yet still be considered 'stable' because her condition is not volatile.").

**B. Residual Functional Capacity**

Plaintiff contends that the ALJ did not evaluate her non-severe impairments in combination in the RFC analysis. (Dkt. 12 at 7–8). The RFC is the most Plaintiff can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ found Plaintiff capable of performing sedentary work with some additional limitations. (R. at 18). *See Childress v. Colvin*, 845 F.3d 789, 792 (7th Cir. 2017) ("[T]he Social Security Administration defines gainful sedentary employment as comprising at least 6 hours of sitting and 2 hours of standing or walking."). In determining disability, all impairments, even those that are not severe should be considered, and in combination. 20 CFR §§ 404.1545(e); 404.1523(c). Therefore "when a claimant has several medical problems, the ALJ must consider [her] condition as a whole." *Parker v. Berryhill*, No. 15 CV 10313, 2017 U.S. Dist. LEXIS 51042, at *27 (N.D. Ill. Apr. 4, 2017) (internal citations and quotations omitted).

In addition to the severe impairments of lupus and osteoarthritis, the ALJ discussed Plaintiff's non-severe impairments of anemia and gastritis, limitations following a stroke, mild mitral regurgitation, obesity[6], and fibromyalgia[7]. (R. at 16–17). As Plaintiff points out, fatigue is a common symptom of anemia and lupus. Indeed Dr. Burda described Plaintiff's "chronic fatigue from the lupus/fibromyalgia" (*Id.* at 929) and Dr. Colbert described her "overwhelming fatigue" during a lupus flare. (*Id.* at 957). The record shows that her conditions caused her joint pain, swelling, stiffness, and fatigue, and doctors noted her significant myofascial pain and multiple sites of pain including in her hip, knee, hand, and foot on examination. (R. at 227, 261, 389–93, 486, 543–45, 858, 968, 1390–97). Doctors consistently prescribed a number of medications including tramadol every 4 to 6 hours as needed for pain. (*see e.g. id.* at 390). As explained in the regulations, "[p]ain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone." 20 CFR § 404.1545(e).

Yet the ALJ did not explain how Plaintiff's fatigue and pain resulting from her severe and non-severe impairments were factored into the RFC. The RFC does not account for some of Plaintiff's restrictions Dr. Burda noted such as chronic fatigue,

---

[6] Plaintiff's BMI at times was 33 or 35, which is obese and at times 40, which is considered "extreme" or "severe" obesity (R. at 326, 390, 969). *See* CDC, 'Defining Adult Overweight and Obesity', https://www.cdc.gov/obesity/adult/defining.html.

[7] Fibromyalgia is "a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues. Researchers believe that fibromyalgia amplifies painful sensations by affecting the way your brain processes pain signals." Mayo Clinic: Fibromyalgia, https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780.

difficulty standing or sitting for any length of time, and dizziness resulting from her lupus treatment (R. at 929) or those Dr. Colbert noted such as Plaintiff's difficulty sitting more than 30 minutes (*id*. at 957) (instead, as discussed above, the ALJ gave these treating doctors' opinions only "little weight."). *See Childress*, 845 F.3d at 792 ("[T]he administrative law judge seems not to have realized that Childress's treating physicians considered *all* his problems in combination when assessing his ability to stand or sit for long periods of time. That is the correct approach.") (emphasis in original) (internal citation omitted); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) ("The fact that the headaches standing alone were not disabling is not grounds for the ALJ to ignore them entirely—it is their impact in combination with Yurt's other impairments that may be critical to his claim."); *Williams v. Berryhill*, 707 F. App'x 402, 407 (7th Cir. 2017) ("[T]he ALJ failed to consider how Williams's drowsiness and lack of energy, combined with his other limitations like difficulty walking, might have affected his ability to perform his past work, which is critical to his disability claim.") (internal citations omitted).

Thus the ALJ did not build a logical bridge between the evidence and her conclusion that Plaintiff was not disabled and could perform the demands of her highly-skilled past work for 8 hours per day. These errors were not harmless because they informed the ALJ's decision with respect to Plaintiff's RFC and ability to do her past work. Remand is warranted.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [12] is **GRANTED**, and the Commissioner's motion [18] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: April 3, 2019

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge